# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

JENNIFER JOHNSON                                                           PLAINTIFF

v.                      CASE NO. 3:16-CV-00311-BD

NANCY A. BERRYHILL, Acting Commissioner
Social Security Administration                                   DEFENDANT

## ORDER REMANDING TO THE COMMISSIONER

Jennifer Johnson applied for social security disability benefits with an alleged onset date of May 1, 2013. (R. at 76). The administrative law judge (ALJ) held a hearing and denied her application. (R. at 29). The Appeals Council denied her request for review. (R. at 1).

Ms. Johnson has requested judicial review, and the parties have consented to the jurisdiction of the magistrate judge. For the reasons stated below, this Court reverses and remands the Commissioner's decision.

**I.  The Commissioner's Decision**

The ALJ found that Ms. Johnson had the following severe impairments: bilateral arm/hand pain status post right carpal tunnel/cubital tunnel release; bilateral knee osteoarthritis; irritable bowel syndrome; obesity; depression; anxiety; and borderline personality disorder. (R. at 16). The ALJ found that Ms. Johnson had the residual functional capacity (RFC) to perform sedentary work with limitations. She could only occasionally climb ramps and stairs; occasionally stoop, crouch, kneel, and crawl; could frequently handle and finger; and only occasionally push and pull with the lower

1

extremities. She required a sit/stand option every 30 minutes for position change; and could only have occasional contact with supervisors, coworkers, and the general public. (R. at 19). This RFC precluded Ms. Johnson's past relevant work. (R. at 28).

The ALJ heard testimony from a vocational expert (VE), who testified that the RFC assigned by the ALJ would allow Ms. Johnson to perform other jobs, such as production assembler or document preparer. (R. at 29). The ALJ held, therefore, that Ms. Johnson was not disabled. (R. at 29).

## II. Discussion

This Court reviews the decision of the ALJ to determine if it is supported by "substantial evidence on the record as a whole." *Wilcutts v. Apfel*, 143 F.3d 1134, 1136 (8th Cir. 1998). This requires that the Court consider the weight of the evidence in the record supporting the decision and to balance it against any contradictory evidence. *Id.* The Court cannot reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

Ms. Johnson argues that the ALJ erred in finding her capable of frequent handling and fingering and failed to include sufficient mental limitations in the RFC. Because the ALJ's finding that Ms. Johnson could perform frequent handling and fingering is not supported by substantial evidence on the record as a whole, it is not necessary to reach her argument that the RFC fails to account for her mental impairments.

The ALJ stated that the record did not support a finding of disabling pain because Ms. Johnson's carpal tunnel and cubital tunnel pain was being treated conservatively with

2

pain medication and also because no physician had opined that work activity was contraindicated by the disorder. (R. at 24).

This reasoning is flawed. The evidence clearly indicates that Ms. Johnson attempted to resolve her issues through surgery in August 2013. (R. at 452–53) Initially, she reported that the surgery had resolved her numbness and tingling and had relieved her pain somewhat. (R. at 449). By October 2013, however, her pain had returned, and her physical therapist reported that her grip strength in her right hand was 25% of that in her left hand. (R. at 436).

In December 2013, Ms. Johnson's therapist noted right grip-strength of 15 pounds and left grip-strength of 45 pounds. (R. at 770). Average normal grip strength for a woman between the ages of 35 and 39 is 66.5 pounds for the left hand and 73.1 pounds for the right hand. Richard W. Bohannon, et al., *Reference Values for Adult Grip Strength Measured with a Jamar Dynamometer: A Descriptive Meta-Analysis*, Physiotherapy 92, 11–15 (2006). Ms. Johnson's strength as measured by her physical therapist falls well below those averages, in a range that can be considered impaired. *Id.* at 14.

Additionally, the lack of an opinion from a treating physician that Ms. Johnson requires manipulative limitations is not dispositive. There is no treating physician opinion in the record, so it is equally true that no treating physician has provided an opinion supporting the ability to frequently handle and finger. A treating physician's silence on the issue cannot be used as evidence that a claimant is not disabled. *Pate-Fires v. Astrue*, 564 F.3d 935, 943 (8th Cir. 2009). The ALJ's reasoning is, therefore, flawed.

The ALJ discredited Ms. Johnson's symptoms, in part, because she was receiving conservative treatment for her arm pain. Aside from the fact that Ms. Johnson had already sought and received surgical intervention, her treating physician specifically noted that he was "not sure there is much I can do to help her." (R. at 839). A nerve conduction study in August 2014—a year after her surgery—found severe entrapment of the median nerve through the carpal tunnel bilaterally. (R. at 848).

The Commissioner points to findings that Ms. Johnson's surgical wound had healed without erythema or obvious swelling and that she had normal muscle tone to demonstrate that her pain had resolved. (R. at 751, 839). The Commissioner does not demonstrate the relevance of these findings to the nerve entrapment that characterizes carpal tunnel syndrome, and these medical findings do not necessarily correlate to Ms. Johnson's ability to use her hands. Ms. Johnson did not argue that her surgical wound had not healed or that she had problems related to muscle tone.

Additionally, while the Commissioner points to Ms. Johnson's daily activities as evidence that her carpal tunnel syndrome is not disabling, the Commissioner did not take into account the reported limitations on those activities. For example, the Commissioner points to Ms. Johnson's ability to wash dishes, but Ms. Johnson stated that she could only wash light dishes such as silverware or plastic cups and dropped heavy pots and pans. (R. at 365). For much of her housework, she stated, she relied on help from her sons. (R. at 364–65). She even stated that she kept her hair cut short in order to avoid the pain. (R. at 57, 61, 364).

4

Finally, citing *Cypress v. Colvin*, 807 F.3d 948, 951 (8th Cir. 2015), the Commissioner argues that light work properly accommodates moderate to severe carpal tunnel syndrome. In *Cypress*, the Court of Appeals affirmed a finding that the claimant, who had been diagnosed with moderate to severe carpal tunnel syndrome, did not have manipulative limitations. But the factual details in that case are far different from those here.

The claimant in *Cypress* had multiple test results and findings showing that she "retained a full range of motion in her hands and wrists and full muscle strength." *Id.* She had also declined surgical intervention. *Id.* Ms. Johnson's records, on the other hand, show severe problems and a lack of grip strength pointing to more severe limitations. And Ms. Johnson had already opted for surgical intervention, which was unfortunately, not entirely successful. The evidence in this case does not support the ALJ's finding that Ms. Johnson was capable of frequent handling and fingering.

## III. Conclusion

For all these reasons, the Court finds that the RFC's manipulative limitations are not supported by substantial evidence on the record as a whole. This case is hereby remanded with instructions to develop the record as necessary, to reevaluate Ms. Johnson's RFC, and to fully consider all the evidence of record.

SO ORDERED, this 26th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE